ROBERT L. HARRELL AND ANNE N. HARRELL,
PETITIONERS *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 15819-87.        Filed August 17, 1988.

*G. Tomas Rhodus* and *Ronald A. Stein,* for the petitioners.

*James W. Lessis,* for the respondent.

WHITAKER, *Judge:* This cause is before us on petitioners' motion to dismiss for lack of jurisdiction.[1] Petitioners claim that we lack jurisdiction over the deficiency determination against them because respondent, seeking to make adjustments with respect to a partnership, failed to issue a notice

---

[1]This is a companion case to *Z-Tron Computer Research & Development Program, Bruce R. and Angie Stivers, Partners Other Than the Tax Matters Partner v. Commissioner,* 91 T.C. 25 (1988).

of final partnership administrative adjustment (FPAA).[2] Respondent objects to petitioners' motion on the basis that the partnership involved falls within the small partnership exception to the partnership audit and litigation provisions,[3] and that therefore issuance of an FPAA was not required.

We have based our findings on the record and files herein.

## OPINION

Petitioners resided at Dallas, Texas, at the time the petition herein was filed. During the calendar year 1983, petitioner Robert L. Harrell was a general partner in HSCC Investor Limited Partnership No. 102 (HSCC), a partnership organized and existing under Texas law. HSCC timely filed a partnership return for 1983 and petitioners reported their distributive share of the loss and investment credit from HSCC on their 1983 Federal income tax return. Respondent determined that petitioners' distributive share of the partnership loss and investment credit for the year 1983 were both zero, and issued a statutory notice to petitioners on April 14, 1987.

We must decide whether, under the facts presented, respondent was required to comply with the partnership audit and litigation procedures enacted in 1982 as part of the Tax Equity and Fiscal Responsibility Act (TEFRA). Sec. 6221 et seq.; Pub. L. 97-248, 96 Stat. 648 (1982). If he was, and no FPAA was issued, then we lack jurisdiction over this case. *Frazell v. Commissioner*, 88 T.C. 1405 (1987); *Maxwell v. Commissioner*, 87 T.C. 783 (1986).

Congress enacted the partnership audit and litigation procedures to provide a method for uniformly adjusting items of partnership income, loss, deduction, or credit that affect each partner. "Congress decided that no longer would a partner's tax liability be determined uniquely but 'the tax treatment of any partnership item [would] be determined at the partnership level.' " *Maxwell v. Commissioner, supra* at 787; see sec. 6221.[4] A "small partnership" is excepted from

---

[2] Sec. 6223(a)(2).

[3] Sec. 6231(a)(1)(B).

[4] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

these procedures, however, provided that—

> (I) such partnership has 10 or fewer partners each of whom is a natural person (other than a nonresident alien) or an estate, and
>
> (II) each partner's share of each partnership item is the same as his share of every other item.
>
> [Sec. 6231(a)(1)(B)(i).]

The parties agree that HSCC had 10 or fewer partners. They disagree with respect to whether the "same share" requirement found in section 6231(a)(1)(B)(i)(II) has been satisfied. Petitioners argue that the same share test should be applied to the terms of the partnership agreement, and that if disproportionate allocations of items with respect to any partner are possible under the terms of the agreement, then the test has not been satisfied. Respondent argues that to determine whether the same share requirement has been met we must look beyond the partnership agreement and determine what items were shared during the year in issue and in what proportions, or, that at the very least, he is entitled to an evidentiary hearing to determine whether special allocations were in fact made during the year.

This is the first time we have addressed this issue. The legislative history to the partnership audit and litigation provisions offers no explanation as to how the same share rule is to be applied:

> i. Small partnerships
>
> Generally, partnerships covered by the rules include any partnership required to file a return under section 6031(a).
>
> However, the rules do not apply to partnerships consisting of 10 or fewer partners each of whom is a natural person (other than a nonresident alien) or an estate, *provided that each partner's share of any partnership item is the same as his distributive share of every other partnership item.* A husband and wife (and their estates) shall be treated as one partner for purposes of this exception.
>
> [H. Rept. 97-760 (Conf.), at 608 (1982), 1982-2 C.B. 600, 667. Emphasis added.]

The temporary regulations[5] are similarly of limited assistance:

---

[5]The regulations addressing the small partnership exception were proposed by Treasury in 1986. L.R. 205-82, 1986-1 C.B. 782. In March 1987, the regulations were declared Temporary Regulations—T.D. 8128, 1987-1 C.B. 325, effective for partnership taxable years beginning after Sept. 3, 1982.

(3) "Same share." The requirement of section 6231(a)(1)(B)(i)(II) is satisfied for a taxable year *if during all periods within that taxable year each partner's share of each of the partnership items specified in sec. 301.6231(a)(3)-1T(a)(1)(i) through (iv) is the same as that partner's share of each of the other partnership items specified in that section during that period* (even though the partner's share of all such specified partnership items changes from period to period within that taxable year). Thus, a partner whose share of all such specified partnership items changes as a result of a sale or redemption of a partnership interest (or portion thereof) or a contribution of cash or property to the partnership during the partnership taxable year shall satisfy the same share requirement if during the period before the sale, redemption, or contribution the partner's share of each specified partnership item is the same as all other specified partnership items and during the period after the sale, redemption, or contribution the partner's share of each specified partnership item is the same as all other specified partnership items. For purposes of section 6231(a)(1)(B)(i)(II) and this section, if each partner's share of each partnership item would be the same as his share or her share of every other item but for allocations made under section 704(c) or allocations made under similar principles in accordance with applicable regulations the requirement of section 6231(a)(1)(B)(i)(II) shall be considered satisfied. Similarly, special basis adjustments pursuant to sections 754, 743, and 734 shall not be taken into account in determining whether the "same share" requirement is met.

(4) Determination made annually. The determination of whether a partnership meets the requirements for the exception for small partnerships under section 6231(a)(1)(B) and this paragraph (a) shall be made with respect to each partnership taxable year. Thus, a partnership that does not qualify as a small partnership in one taxable year may qualify as a small partnership in another taxable year if the requirements for the exception under section 6231(a)(1)(B) and this paragraph (a) are met with respect to that other taxable year.

[Sec. 301.6231(a)(1)-1T(a)(3)-(4), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6789 (Mar. 5, 1987). Emphasis added.]

The partnership items referred to in these regulations are:

(i) Items of income, gain, loss, deduction, or credit of the partnership;
(ii) Expenditures by the partnership not deductible in computing its taxable income (for example, charitable contributions);
(iii) Items of the partnership which may be tax preference items under section 57(a) for any partner;
(iv) Income of the partnership exempt from tax * * *

[Sec. 301.6231(a)(3)-1T(a)(1), Temporary Proced. & Admin. Regs., 51 Fed. Reg. 13214 (Apr. 18, 1986).]

Petitioners argue that "Although the Temporary Regulations do not state that the 'same share' test is to be applied with reference to the partnership agreement, that conclusion

is implicit."[6] Looking at the statute and regulations, as well as the purpose of the partnership audit and litigation provisions, we do not reach the same conclusion.

It is logical to assume that the reference to a partner's share in section 6231(a)(1)(B) is to the partner's distributive share as determined in the partnership provisions of the Code (which provide that a partner's distributive share is to be determined by the partnership agreement). See sec. 704(a). However, it does not necessarily follow that the same-share test is to be applied solely by reference to what the partner's distributive share would be or might be under the agreement. We believe that for purposes of determining whether a partnership is a small partnership and whether the same share rule is satisfied, the test should be applied by determining whether the partnership reported more than one partnership item for the year and, if so, how those items were shared by each partner. This determination should be made by respondent as of the date of commencement of the audit of the partnership (but not necessarily on that date) by examining the partnership return and the corresponding Schedules K-1, and any amendments thereto received prior to this date.

Section 6031(a) provides that every partnership is required to—

make a return for each taxable year, stating specifically the items of its gross income and the deductions allowable by subtitle A * * * and shall include in the return the names and addresses of the individuals who would be entitled to share in the taxable income if distributed and the amount of the distributive share of each individual.

Respondent's regulations further clarify that the return shall include the "amount of the distributive shares of income, gain, loss, deduction, or credit (including any items which enter into the determination of the tax imposed by section 56) allocated to each partner." Sec. 1.6031-1(a)(1), Income Tax Regs. Thus the returns and Schedules K-1 are

---

[6]Petitioners argue that the partnership agreement in this case provided that items in category (i) of the regulations could be distributed proportionate to the partners' capital contributions or their partnership interest, depending on the state of the limited partners' capital accounts, however the items in categories (ii)-(iv) of the regulations are not provided for in the partnership agreement and can only be distributed in accordance with the partners' partnership interests. The possibility that items in categories (ii)-(iv) could be distributed differently from items in category (i) therefore exists, petitioners contend, and the same share rule is not satisfied.

required to reflect what each partner's distributive share of each partnership item was for the partnership year.

For the purpose of classifying a partnership under section 6231(a)(1)(B)(i)(II), but for no other purpose, respondent, the partnership, and all partners are entitled to assume that the partnership has determined each partner's distributive share in accordance with the terms of the partnership agreement (see sec. 704(a)), or, in the absence of a provision in the agreement, in accordance with the partners' interests in the partnership. See sec. 704(b). If the shares reported are not consistent with the terms of the partnership agreement (or, in the event there is no provision in the agreement or no agreement, are not consistent with the partners' interests in the partnership) the partners and partnership bear the risk of erroneously being or not being classified as a small partnership. Respondent should not be required to make this determination at his peril. Because this section serves the limited purpose of determining to whom to issue a statutory notice or whether to issue an FPAA, and for the sake of judicial economy, we will not for these purposes permit a partner or representative of a partnership or respondent to claim a result other than that identified in the return and Schedules K-1 as filed and amended prior to the date of commencement of the partnership audit.

Respondent's proposed adjustments to partnership items, to a partner's distributive share of an item, or regarding the economic effect of allocations, whether made during the audit stage, in the issuance of a statutory notice or FPAA, or as ultimately determined in litigation, will not affect the status of the partnership as being or not being a small partnership for these purposes. Nor will an amended return filed on behalf of the partnership or a partner after the commencement of the audit affect the status of the partnership for the limited purpose of determining whether section 6231(a)(1)(B)(i)(II) applies. This bright-line test simply precludes "a party" from attempting to secure some undue advantage by the running of the statute of limitations.

The regulations provide that the determination of whether a partnership meets the requirements for the small partnership exception shall be made with respect to each partner-

ship year. Sec. 301.6231(a)(1)-1T(a)(4), Temporary Proced. & Admin. Regs. By relying on the partnership returns and accompanying Schedules K-1 to determine each partner's share of the partnership items and whether the same share rule applies, the extent to which respondent must interpret the partnership agreement each year will be minimized. We believe this approach best serves the purpose of simplicity that is behind the partnership audit and litigation provisions.

Moreover, this approach is entirely consistent with section 6233. That section prescribes in general that where an entity files a return as a partnership, it will be subject to TEFRA partnership audit and litigation procedures even though it is subsequently determined that the putative partnership is not a partnership for tax purposes. In this situation, Congress mandated that the information on the tax return would be determinative of the procedures to be followed, even if the underlying facts later prove the return to be incorrect. The temporary regulations carry out the intent of section 6233 in that these procedures apply—

with respect to any taxable year of an entity for which such entity files a partnership return as well as to such entity's items for that taxable year and to any person holding an interest in such entity at any time during that taxable year. Any final partnership administrative adjustment or judicial determination resulting from a proceeding under subchapter C with respect to such taxable year may include a determination that the entity is not a partnership for such taxable year as well as determinations with respect to all items of the entity which would be partnership items, as defined in section 6231(a)(3) and the regulations thereunder, if such entity had been a partnership in such taxable year (including, for example, any amounts taxable to an entity determined to be an association taxable as a corporation). [Temporary Proced. & Admin. Regs., sec. 301.6233-1T(a), 52 Fed. Reg. 6795 (Mar. 5, 1987).]

Thus, the result reached here is totally consistent with the approach mandated by Congress in section 6233, i.e., making the determination regarding the application of the TEFRA procedures on the basis of the partnership information return.

Turning to the facts of this case, the partnership return reflects that HSCC operated at a net loss for the calendar year 1983. HSCC reported the following items of interest, depreciation, and other deductions on its Form 1065:

1. Total deductible interest expense (not claimed elsewhere on the return)........................................... $7,883
2. Depreciation (5 year property placed in service in 1983, cost/basis of $44,000)..................................... 6,600
3. "Other deductions"
   (a) Amortization................................. $66
   (b) Boarding..................................... 6,404
   (c) Breeding fees................................ 110,750
   (d) Freight ...................................... 450
   (e) Lease cost - bulls ............................ 25,000
   (f) Lease cost - donor cows....................... 390,000
   (g) Lease cost - recipient cows ................... 31,200
   (h) Licenses and filing fees ...................... 2,500
   (i) Legal and accounting ........................ 4,338
   (j) Management fees............................. 10,000
   (k) Supplies ..................................... 181
                         580,889    580,889

ORDINARY LOSS ..................................... 595,372

The partnership also reported an investment credit in the amount of $44,000.

The Schedules K-1, attached to the Form 1065, indicate that the net loss and investment credit were allocated to the partners according to the following percentages:

| Partner | Status | Capital contributions | Percent ownership | Percent loss | Percent credit |
|---------|--------|----------------------|-------------------|--------------|----------------|
| R. Harrell | GP | $100 | 15.0 | 1.0 | 1.0 |
| J. Hutchinson | GP | 100 | 15.0 | 1.0 | 1.0 |
| J. Hutchinson | LP | 100,000 | 7.0 | 9.8 | 9.8 |
| E. Howerdd, Jr. | LP | 200,000 | 14.0 | 19.6 | 19.6 |
| J. Guy | LP | 100,000 | 7.0 | 9.8 | 9.8 |
| W. Lowry | LP | 600,000 | 42.0 | 58.8 | 58.8 |

The partnership return reflects that all partnership items which occurred during the year were shared proportionate to the partners' capital contributions (with adjustments so that general partners received at least 2 percent of all items).

The partnership return is consistent with the partnership agreement, which provides that the items were to be shared proportionate to capital contributions until "net cash flow" was sufficient to return to the limited partners their capital contributions:

## ARTICLE VI

### *Profits and Losses*

2. For the purposes of I.R.C. Sections 702 and 704, the determination of each Partner's distributive share of any item of income, gain, loss, deduction, credit or allowance shall be made,· first, dollar-for-dollar in accordance with such Partner's distributable share of Net Cash Flow, to the extent thereof, and, thereafter, in accordance and in proportion to such Partner's Percentage of Partnership Interest; provided, however, that, notwithstanding the foregoing provisions of this Article VI-2, the General Partners shall nonetheless receive at least two percent (2%) of all Partnership items of income, gain, loss, deduction, credit or allowance for each Partnership Accounting Year or other period.

\*     \*     \*     \*     \*     \*     \*

## ARTICLE XII

### *Distributions*

1. The Net Cash Flow shall be distributed annually (or more or less frequently if the Managing General Partner deems it advisable) among the Partners in accordance with the provisions of this Article XII.

\*     \*     \*     \*     \*     \*     \*

3. The Net Cash Flow of the Partnership shall be distributed with respect to each Partnership Accounting Year as follows:

(a) Any Net Cash Flow shall first be distributed to the Limited Partners (*pro rata*, in proportion to their respective Percentages of Partnership Interest) to the extent of their Net Capital Investment, it being understood and agreed that such priority shall continue until the Limited Partners shall receive all of their Net Capital Investment.

(b) To the extent there shall be any Net Cash Flow remaining after the aforesaid priority distribution, such remaining Net Cash Flow shall be distributed to all Partners, *pro rata*, in proportion to their respective Percentages of Partnership Interest.

On these facts, HSCC qualified as a small partnership. Although different allocations might have occurred if items other than those in the agreement had been distributed during the year in issue, the partnership returns and Schedules K-1 reflect that for 1983, all items were shared by all partners proportionate to their capital contributions.[7]

---

[7]We also note that had we not looked to the reporting position, but looked only to the terms of the agreement, we most likely would have reached the same result. Contrary to petitioners' contentions, it appears that partnership items in categories (ii)-(iv) of the regulations were covered by the partnership agreement. (See note 3 *supra.*) The regulations identify "partnership items" as they are reported by the partnership, i.e., items of income, gain, loss, deduction or credit *of the partnership;* income *of the partnership* exempt from tax, etc. The partnership agreement refers to *"each Partners' distributive share of any item* of income, gain, loss,

Based on the foregoing, respondent's statutory notice is not invalid on the grounds that an FPAA should have been issued, and petitioners' motion to dismiss for lack of jurisdiction is denied. To reflect the foregoing,

*An appropriate order will be entered.*

Reviewed by the Court.

NIMS, PARKER, KÖRNER, SHIELDS, CLAPP, SWIFT, JACOBS, WRIGHT, PARR, WILLIAMS, WELLS, RUWE, and WHALEN, *JJ.*, agree with the majority opinion.

---

HAMBLEN, *J.*, dissenting: I must disagree with the majority's approach here and consequently dissent. The majority notes the logic of assuming that the reference to a partner's share in section 6231(a)(1)(B) is to the partner's distributive share as determined in the partnership provisions of the Code. The Code provisions should logically be used to interpret the partnership agreement. However, the majority moves away from this more natural and logical interpretation when they suggest that the "same share" test is to be based solely upon the distributive share reflected by the partners on the partnership tax return.

I submit that the small partnership exception under section 6231 was meant to be limited to simple partnerships with 10 or fewer partners and in which distributive shares of the partnership items are determined under the partnership agreement pro rata in accordance with a partner's interest or capital account. When complicated provisions are inserted into the agreement to enable a capital or other recovery by some partners before others or to flip-flop allocations, I suggest that such a partnership is not a small partnership under section 6231, because each partner's distributive share of each partnership item may not be the same as his distributive share of every other partnership item.

Section 6231(a)(1)(B)(i) states that, for purposes of the partnership audit and litigation provisions,

---

deduction, credit or allowance." (Emphasis added.) Thus, although the regulations separate the partnership items into various categories, the agreement in this case sets forth the method by which each partners' distributive share of any (and all) of those items will be determined.

The term "partnership" shall not include any partnership if—

(I) such partnership has 10 or fewer partners each of whom is a natural person (other than a nonresident alien) or an estate, and

(II) each partner's share of each partnership item is the same as his share of every other item.

In interpreting this language, many commentators have noted the problem which now faces this Court.[1] To resolve this quandary, I first find it appropriate to note that prior to the passage of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), the Code provided no efficient means to audit many tax shelters organized as partnerships. Instead, the auditing of these partnerships and their partners was done in a fragmented and confusing fashion and resulted in a myriad of problems.[2] To overcome the problems associated with the pre-TEFRA auditing of partnerships, Congress enacted the partnership audit and litigation provisions contained within TEFRA.[3] By enacting these audit provisions, Congress cast a large net, excepting from the new provisions only those section 6031(a) partnerships which qualify as "small partnerships." Sec. 6231(a)(1)(A) and (B).

---

[1]See Keeling, "Tax Treatment of Partnership Tax Audits," 15 J. Real Est. Taxation 36. 44-45 (1987); see also Lewis & Brown, "Partnership Audits and Litigation Under TEFRA," N.Y.U. Forty-Second Annual Institute on Federal Taxation, 3-1, 3-17—3-18 (1984); 467 Tax Management (BNA) A-3 (1987).

[2]The problems associated with this fragmented auditing of partnership items are discussed more fully in Federal Income Tax Project Subchapter K - Proposals on the Taxation of Partners, American Law Institute (adopted May 20, 1982; published 1984), at 397-399.

[3]A first version of the TEFRA partnership audit and litigation provisions appeared as H.R. 6300, a bill introduced on May 6, 1982, and designated as the "Tax Compliance Act of 1982." A second and comparatively identical bill numbered H. Rept. 6395 and labeled the "Tax Treatment of Partnership Items Act of 1982" was introduced on May 18, 1982. Neither of these proposed bills, however, contained a small partnership exception to its provisions' application. H.R. 6300, sec. 602 adding sec. 6231(a) (1) to the Code, 97th Cong., 2d Sess. (introduced May 6, 1982); see also Tax Compliance Act of 1982 and Related Legislation: Hearing on H.R. 6300 Before the House Committee on Ways and Means, 97th Cong., 2d Sess. 259-260 (1982) (hereafter cited as Hearings). The exception represented a modification to H.R. 6300 and was added by the TEFRA conferees at the time they decided to include the provisions of H.R. 6300 as part of the act they were then considering. Compilation of conferees' decision on H.R. 4961—the "Tax Equity and Fiscal Responsibility Act of 1982," 97th Cong., 2d Sess. 33 (Comm. Print 1982).

In hearings held before the House Committee on Ways and Means for H.R. 6300, John S. Nolan, the then chairman of the Section of Taxation of the American Bar Association, suggested that H.R. 6300 should provide an exception for small partnerships of 10 or fewer partners. Hearings at 259. He then stated that it would be "preferred to limit the universe somewhat further," but he could think of no effective way to do so. Hearings at 259. Sec. 6231(a)(1)(B)(i)(II) represents an attempt by the TEFRA conferees, and ulitmately Congress, to limit further the scope of the small partnership exception.

Most of the problems associated with the pre-TEFRA system had arisen in connection with syndicated partnerships. However, problems of separate proceedings and potentially inconsistent results can arise even within the context of very small partnerships. Federal Income Tax Project Subchapter K - Proposals on the Taxation of Partners, American Law Institute 411 (adopted May 20, 1982; published 1984); see also Tax Compliance Act of 1982 and Related Legislation: Hearing on H.R. 6300 Before the House Comm. on Ways and Means, 97th Cong., 2d Sess. 256 (1982); cf. *111 West 16 Street Owners, Inc., Alan Silverman, Tax Matters Person v. Commissioner,* 90 T.C. 1243 (1988) (focusing on the small S corporation exception to the S corporation audit and litigation procedures and suggesting that the exception's parameters should be considered in light of whether a unified proceeding would prove futile or useless). Because these audit problems can arise within the context of small partnerships, a narrow construction of any exception to the partnership audit provisions is mandated. An examination of language found in the Conference report accompanying TEFRA and mentioned in the majority's opinion supports this narrow construction.

The TEFRA conferees stated that the "small partnership" rules "do not apply to partnerships consisting of 10 or fewer partners each of whom is a natural person * * * , provided that every partner's share of *any partnership item* is the same as his *distributive share* of *every other partnership item.* (H. Rept. 97-760 (Conf.), at 608 (1982), 1982-2 C.B. 600, 667; emphasis added.) This language clearly links a small partnership determination to a careful examination of each partner's distributive share. Section 704(a) establishes the process by which a partner's distributive share is determined and provides that the partnership agreement controls unless a specific exception exists.[4]

---

[4]Sec. 761(c) defines the phrase "partnership agreement" in the following manner:

(c) PARTNERSHIP AGREEMENT.—For purposes of this subchapter, a partnership agreement includes any modifications of the partnership agreement made prior to, or at, the time prescribed by law for the filing of the partnership return for the taxable year (not including extensions) which are agreed to by all the partners, or which are adopted in such other manner as may be provided by the partnership agreement.

Sec. 1.761-1(c), Income Tax Regs., amplifies upon this given definition through its statement that:

The language from the Conference report also refers to "any partnership item" and "every other partnership item." As noted by the majority, partnership items are:

(i) Items of income, gain, loss, deduction, or credit of the partnership;

(ii) Expenditures by the partnership not deductible in computing its taxable income (for example, charitable contributions);

(iii) Items of the partnership which may be tax preference items under section 57(a) for any partner; [and]

(iv) Income of the partnership exempt from tax; * * *

[Sec. 301.6231(a)(3)-1T(a)(1), Temporary Proced. & Admin. Regs., 51 Fed. Reg. 13214 (Apr. 18, 1986).]

In applying the "small partnership" exception, we must then compare each partner's distributive share of *any* one of these listed items to his share of *every* other one of these items. Our comparison is not limited under the language of the report to an analysis of those specific partnership items arising in any one taxable year.[5] The report's language thus places no limitation on our need to compare all partnership items which might represent a portion of each partner's distributive share.

By focusing on only reported partnership items, the majority reads a limitation into the report's language and consequently expands the notion of a "small partnership" beyond a narrow construction. By accepting such a limitation, the majority fails to compare *any* partnership item to *every other* partnership item; they instead compare only specific items to one another.

I additionally note that, if the partnership agreement itself controls the issue, the parties can make an up-front determination regarding which procedure to follow. This focus on the agreement eliminates the need to examine operational facts regarding the partnership in order to

---

"As to any matter on which the partnership agreement, or any modification thereof, is silent, the provisions of local law shall be considered to constitute a part of the agreement."

Noting this amplification, we must look to both the partner's agreement and State law to determine an individual partner's distributive share of all existing and possibly existing partnership items.

[5] Sec. 301.6231(a)(1)-1T(a)(4), Temporary Proced. & Admin. Regs., states that a small partnership determination is to be made with respect to each partnership taxable year. This yearly determination is required, however, because partners in a "small partnership" are free to change the number of partners in their partnership and to alter the terms of the agreement which bind them as partners.

determine jurisdiction.[6] Furthermore, it is important that the determination regarding the applicability of TEFRA's audit procedures be made at the examination stage based on fixed and knowable facts. The partnership agreement provides this factual basis. Granted, some partnership agreements may well be complex and ambiguous but, even then, the agreement is fixed and unalterable and provides a much firmer basis for determination than potentially disputed facts regarding how the partnership actually operated. [7]

A hypothetical situation brings this last comment to bear. Assume individuals A and B establish AB, as cash basis partnership. A and B agree to equally share all partnership tax items, except tax-exempt income which is to be allocated wholly to A. Now suppose that AB receives income which is in actuality tax exempt. AB fails to record this tax-exempt income amount either because of inadvertence or because B disputes the partnership-level characterization of this income as being exempt. Only an in-depth examination by the Service or a court into operational facts reveals that AB does not truly qualify as a small partnership. These true facts and their consequence of nonqualification are in stark contrast to the facts as presented in the returns of the partnership and partners and the consequence of these presented facts that AB does qualify as a small partnership. A first look at the partnership agreement, however, properly reveals that AB is not a small partnership and circumvents any need to fully examine the given situation's operational facts.

As this hypothetical situation also brings to light, a predominant focus on the facts as presented in the returns of the partnership and partners may well lead to the

---

[6]If we were to adopt the majority's approach, I have doubts as to whether the partners would be bound by the manner in which the partnership reported the items even though the facts show the return to be in error. Would such a rationale be based on principles of equitable estoppel? I am not sure that equitable estoppel could be applied in a situation where true operative facts were discovered indicating that the partnership incorrectly reported its partner's distributive shares. See *Century Data Systems, Inc. v. Commissioner*, 86 T.C. 157 (1986).

[7]If there is any doubt as to whether or not the partnership is covered by the TEFRA procedures, we can well expect respondent to proceed on alternate grounds, thus doubling the necessary administrative burdens on the Government, taxpayers, and this Court. I believe that the need to take these burdensome and inconsistent alternative approaches will be minimized (although not entirely eliminated) by taking the position which I advocate.

misreporting of partnership items by these persons in their attempt to have the partnership fall within or without the audit provisions' exception.

Additionally, section 301.6231(a)(1)-1T(a)(3), Temporary Proced. & Admin. Regs., states that the small partnership requirements must be satisfied "during all periods" of the partnership's taxable year. To the extent the Schedules K-1 in evidence do not reflect individual period adjustments, but instead reflect aggregate allocations over an entire taxable year, a problem may arise in our resting our "small partnership" determination solely on the amounts listed on these tax forms.

I believe the majority places undue reliance on what is "required" to be reported on the partnership returns and Schedules K-1 because such returns and schedules can be amended up to the date of the statutory notice of deficiency. However, the partnership agreement in effect at the time of the filing due date of the return for the partnership (or, if there is no partnership agreement, the applicable partnership law in effect at such time) is concrete, and subsequent amendments or modifications do not affect the partners' distributive shares. See sec. 761(c). Nevertheless, the majority observes that only the partners and partnership should be bound by the partnership agreement in the determination of classification as a small partnership under the statute and that respondent should not be required to be tied to the partnership agreement in making such a determination, for it would be at his peril. However, I respectfully submit that respondent often is required to make determinations "at his peril." See, e.g., *Dellacroce v. Commissioner*, 83 T.C. 269 (1984), and *Matut v. Commissioner*, 88 T.C. 1250 (1987), on appeal (11th Cir., Aug. 20, 1987).

Further, the majority establishes an arbitrary rule to expedite the already makeshift reporting standard which would preclude any petitioner "to claim a result other than that identified in the return and Schedules K-1 as filed and amended prior to the date of *commencement of the partnership audit*" (majority opinion at 246-247; emphasis supplied). This judicial mandate not only is arbitrary but is inconsistent with our authority and with judicial economy.

In *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324 (1974), we determined that ordinarily we will not go behind the statutory notice of deficiency, and this principle has been consistently applied by this Court since that time. Yet we now must determine when a partnership audit commences. Quo vadis? I submit that this arbitrary rule goes beyond the function and jurisdiction of this Court. It is for Congress to mandate such rules. Such is not our province. In my opinion, the majority's promulgation of such a rule goes beyond the scope of our authority.

I am concerned that the report-oriented rule of the majority may lead to disturbing, unpredictable results that neither the Congress, the parties, nor this Court anticipated. It seems to me that the majority's rule might make the examination process more difficult, not less so, as stressed by the majority. While there always is a partnership agreement (whether or not in writing), there are occasions when no partnership return is filed. If the partnership tax return is to be the sole guide, then what is to be looked to, for purposes of the small partnership qualification, if there is no such document? The majority's miniregulations do not make for simple, easily determinable answers. Consequently, the examination procedure becomes more complex and is not facilitated.

Finally, I submit that the majority's reference to section 6233 to bolster its contention is misplaced. Section 6233, essentially, says that if an entity which is not a partnership files a partnership return, then, to the extent provided in regulations under that section, the partnership level determination requirements shall apply even though it thereafter is determined that the filing entity was not a partnership. Section 6233 simply has nothing to do with whether a partnership is or is not a small partnership under section 6231. The majority acknowledges in its "logic" that the statute on its face makes the partnership agreement determinative, and the reference to the special exception under the section 6233 regulations is inappropriate. The section 6233 regulations are legislative and they provide the exception. No such legislative regulations are authorized by section 6231, and the regulations promulgated under section 6231 do not address the issue before us. The fact that the

Congress has said that the facts are to be overridden by the tax return in one situation is a strong argument that the tax return is not to override the facts in other situations. Inclusio unius est exclusio alterius. Consequently, we should follow the directive of the statutes to address that void, and that directive is in section 704.

In sum, the "small partnership" exception is an exception which must be narrowly construed. The "same share" requirement confirms that Congress was concerned with simplicity, as well as size. Only a simple partnership structure, devoid of non-pro-rata allocations, should be excluded from the partnership audit rules. The majority's approach abandons this emphasis on a simple partnership structure and, consequently, expands the "small partnership" concept beyond a narrow construction. Further, I believe the means adopted by the majority exceeds our authority.

Because the agreement in this case contains complex allocation provisions, I submit that this case's partnership does not qualify as a small partnership under section 6231.

CHABOT and GERBER, *JJ.,* agree with this dissent.

