Z-TRON COMPUTER RESEARCH & DEVELOPMENT PROGRAM, BRUCE R. AND ANGIE STIVERS, PARTNERS OTHER THAN THE TAX MATTERS PARTNER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Z-TRON COMPUTER RESEARCH & DEVELOPMENT PROGRAM # 2 LIMITED, BRUCE R. AND ANGIE STIVERS, PARTNERS OTHER THAN THE TAX MATTERS PARTNER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 23092-87, 23102-87.    Filed August 17, 1988.

*E. John Eagleton* and *Thomas G. Potts,* for the petitioners.

*Carolyn S. Rose,* for the respondent.

OPINION

WHITAKER, *Judge:* These cases were assigned to Special Trial Judge James M. Gussis pursuant to section 7443A(b)(4)[1] and Rule 180 et seq., Tax Court Rules of Practice and Procedure. The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

GUSSIS, *Special Trial Judge:* These cases are before the Court on petitioners' motions to dismiss for lack of jurisdiction pursuant to section 6231(a)(1)(B) filed October 14, 1987. A hearing on said motions was held at a session of the Court in Washington, D.C., on January 6, 1988. At the conclusion of the hearing, petitioners' motions were taken under advisement.

The jurisdictional question here presented turns upon the interpretation of the term "small partnership" within the

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the period herein involved, unless otherwise indicated.

meaning of section 6231(a)(1)(B). Petitioners contend that the Z-Tron partnership[2] falls within the small partnership exception to the partnership audit and litigation provisions of the Code and therefore the issuance of a notice of final partnership administrative adjustment (FPAA) was inappropriate and without effect to give the Court jurisdiction.

The Z-Tron partnership was organized as a Texas limited partnership. On March 23, 1987, an FPAA was mailed to the designated tax matters partner of the Z-Tron partnership pursuant to the partnership audit and litigation provisions of the Code ( sec. 6221 et seq.). In said notice, respondent determined adjustments to the partnership returns for the taxable years 1982 (docket No. 23092-87) and the taxable year 1983 (docket No. 23101-87). No petitions were filed by the tax matters partner within the 90-day period specified in section 6226(a). The petitions herein involved for readjustment of the partnership items were filed by notice partners under the provisions of section 6226(b)(1).

Section 6231(a)(1)(B) excludes certain small partnerships from the partnership audit and litigation provisions, unless the partnership elects to have such provisions apply. The relevant Code section provides as follows:

(B) EXCEPTION FOR SMALL PARTNERSHIPS.—

(i) IN GENERAL.—The term "partnership" shall not include any partnership if—

(I) such partnership has 10 or fewer partners each of whom is a natural person (other than a nonresident alien) or an estate, and

(II) each partner's share of each partnership item is the same as his share of every other item.
For purposes of the preceding sentence, a husband and wife (and their estates) shall be treated as 1 partner.

(ii) ELECTION TO HAVE SUBCHAPTER APPLY.—A partnership (within the meaning of subparagraph (A)) may for any taxable year elect to have clause (i) not apply. Such election shall apply for such taxable year and all subsequent taxable years unless revoked with the consent of the Secretary.
[Sec. 6231 (a)(1)(B).]

---

[2]In docket No. 23092-87, petitioners are Z-Tron Computer Research & Development Program, Bruce R. and Angie Stivers, partners other than the tax matters partner. In docket No. 23102-87, petitioners are Z-Tron Computer Research & Development Program #2 Limited, Bruce R. and Angie Stivers, partners other than the tax matters partner. We shall hereinafter refer to the partnerships involved as the Z-Tron partnership.

Respondent agrees that the Z-Tron partnership had 10 or fewer partners during the relevant periods and further agrees that the Z-Tron partnership did not file a section 6231(a)(1)(B)(ii) election to be treated as a partnership. The dispute of the parties centers upon the applicability of section 6231(a)(1)(B)(i)(II) to the facts as they existed in the taxable years 1982 and 1983, i.e., whether "each partner's share of each partnership item is the same as his share of every other item."

Both the 1982 Agreement of Limited Partnership (dated December 28, 1982) and the 1983 Agreement of Limited Partnership (dated November 10, 1983) provide for the allocation of net losses and net profits among the partners. Under both limited partnership agreements, the net losses are allocated to the limited partners in designated percentage shares until a cumulative amount is reached ($456,000 in 1982, and $300,000 in 1983), at which time the net loss allocation percentages are revised downwards. The allocation of net profits and net losses is initially the same. With respect to the allocation of net profits, the partnership agreements provide that the initial allocation will govern until the limited partners have been allocated profits in a cumulative amount equal to the aggregate of all losses of the partnership previously allocated to them. Thereupon, the net profit allocation will continue under reduced percentage shares.

It thus appears that the circumstances that trigger the shifting of the allocations of net losses and net profits are different, which gives rise to dissimilar allocations of net losses and net profits to individual partners. In 1982, for example, the allocation of net losses with respect to limited partner Dr. Bruce R. Stivers was 13.16 percent (the same as his percentage allocation of net profits) until the cumulative amount of net losses allocated to the limited partners reached $456,000. However, since net losses of $456,000 were allocated to the limited partners in 1982, Dr. Stivers' share of net losses by the end of the year was reduced under the partnership agreement to 5 percent while his percentage allocation of net profits remained the same. This disparity in shares is reflected on the 1982 Schedule K-1 showing Dr. Stivers' percentage of profit sharing at the end

of the year as 13.16 percent and his percentage of loss sharing as 5 percent. Similarly, in 1983, the allocation of net losses with respect to Dr. Stivers was 13.16 percent until the limited partners were allocated net losses in the cumulative amount of $300,000. Since net losses in the total amount of $301,988.81 were allocated to the limited partners in 1983, Dr. Stivers' share of net losses by the end of the year dropped to 7.72 percent while his percentage allocation of net profits remained unchanged at 13.16 percent. Again, the disparity between Dr. Stivers' profit-sharing and loss-sharing percentages as of the end of the year 1983 is reflected in the relevant Schedule K-1. A similar disparity exists in the percentages of net losses and net profits in both years with respect to all of the limited partners involved in the Z-Tron partnership.

In this case, petitioners argue that although the partnership agreement provides for such disparate treatment of the net losses and net profits and although the percentages by which the partners share losses change once losses equal capital contributions, the same share rule is not violated "in a year in which only a loss results from partnership operations and such loss is consistently allocated to the partners based upon their respective capital account balances." We agree with the result urged by petitioners.[3]

Whether a partnership qualifies as a small partnership depends upon whether the partnership reported more than one partnership item for the year, and if so, how those items were shared by each partner, not, as respondent argues, how items might have been shared under the terms of the partnership agreement.

This determination should be made by respondent as of the date of commencement of the audit of the partnership (but not necessarily on that date) by examining the partnership return and the corresponding Schedules K-1, and any amendments thereto received prior to this date.

Section 6031(a) provides that every partnership is required to—

---

[3]Petitioners' statement that the loss is consistently allocated to the partners based on their capital account balances is only partially correct. Under the terms of the agreements, the losses are allocated based on capital account balances until a cumulative amount is reached, at which point the allocation percentages are revised downwards because the general partners are allocated a percentage of losses at that point. This allocation does not change our result however. See discussion, page 245 *infra.*

"make a return for each taxable year, stating specifically the items of its gross income and the deductions allowable by subtitle A * * * and shall include in the return the names and addresses of the individuals who would be entitled to share in the taxable income if distributed and the amount of the distributive share of each individual."

Respondent's regulations further clarify that the return shall include the "amount of the distributive share of income, gain, loss, deduction, or credit (including any items which enter into the determination of the tax imposed by section 56) allocated to each partner." Sec. 1.6031-1(a)(1), Income Tax Regs. Thus the returns and Schedules K-1 are required to reflect what each partner's distributive share of each partnership item was for the partnership year.

[*Harrell v. Commissioner,* 91 T.C. 242 (1988).]

Here, only net loss, and the partners' distributive shares of that loss were reported by the partnership. An allocation to a partner of a share of partnership net or "bottom line" taxable income or loss is an allocation to such partner of the same share of each item of income, gain, loss, and deduction that is taken into account in computing the taxable income or loss. See sec. 1.704-1(b)(1)(vii), Income Tax Regs. In this case, the same share rule is satisfied because each partner's share of each of the partnership items was the same as his share of every other item available for distribution during the year.

The fact that each partner's share of net loss changed during the course of the year does not affect this result. The temporary regulations provide:

(3) "Same share." The requirement of section 6231(a)(1)(B)(i)(II) is satisfied for a taxable year if *during all periods within that taxable year* each partner's share of each of the partnership items specified in sec. 301.6231(a)(3)-1T(a)(1)(i) through (iv) is the same as that partner's share of each of the other partnership items specified in that section during that period (*even though the partner's share of all such specified partnership items changes from period to period within that taxable year*). Thus, a partner whose share of all such specified partnership items changes as a result of a sale or redemption of a partnership interest (or portion thereof) or a contribution of cash or property to the partnership during the partnership taxable year shall satisfy the same share requirement *if during the period before the sale, redemption, or contribution the partner's share of each specified partnership item is the same as all other specified partnership items and during the period after the sale, redemption, or contribution the partner's share of each specified partnership item is the same as all other specified partnership items.* For purposes of section 6231(a)(1)(B)(i)(II) and this section, if each partner's share of each

partnership item would be the same as his or her share of every other item but for allocations made under section 704(c) or allocations made under similar principles in accordance with applicable regulations the requirement of section 6231(a)(1)(B)(i)(II) shall be considered satisfied. Similarly, special basis adjustments pursuant to sections 754, 743, and 734 shall not be taken into account in determining whether the "same share" requirement is met. [Sec. 301.6231(a)(1)-1T(a)(3), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6789 (Mar. 5, 1987). Emphasis added.]

Even though each partner's share of net loss changed during the year, each partner's share of loss (and therefore the items comprising the net loss) was the same before the change and each partner's share was the same afterwards. Under the regulations, this type of change does not violate the same-share rule.

On the basis of the above, the Z-Tron partnership qualifies under the small partnership exclusion from the partnership audit and litigation provisions of the Code carved out by section 6231(a)(1)(B). The issuance of an FPAA was therefore not appropriate in these cases.

Petitioners' second argument, that the changes in the allocations that led to disparate shares of net losses and net profits in 1982 and 1983 are condoned by the temporary regulations, is without merit.[4] Petitioners' reliance on the portion of the cited regulation is misplaced. The allocations with which we are here concerned were not made under section 704(c) and are not made under principles similar to those made under section 704(c).

The partnership audit and litigation provisions of the Code (sec. 6221 et seq.) were designed to remedy perceived inadequacies in the judicial administration of issues relating to partnership items at the partner's level. An exception for small partnerships, with few partners and few complexities, was deemed advisable. We believe that the conclusion reached in these cases best comports with the consider-

---

[4]Petitioners emphasize the following language in the cited regulations:

"For purposes of section 6231(a)(1)(B)(i)(II) and this section, if each partner's share of each partnership item would be the same as his or her share of every other item but for allocations made under section 704(c) or allocations made under similar principles in accordance with applicable regulations the requirements of section 6231(a)(1)(B)(i)(II) shall be considered satisfied. [Sec. 301.6231(a)(1)-1T(a)(3), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6789 (Mar. 5, 1987).]"

ations of simplicity that impelled the partnership audit and litigation provisions.

We conclude, on the basis of this record, that respondent's notices of final partnership administrative adjustment were improperly issued, and petitioners' motions to dismiss for lack of jurisdiction are granted.

*An appropriate order will be entered.*

Reviewed by the Court.

NIMS, PARKER, KÖRNER, SHIELDS, CLAPP, SWIFT, JACOBS, WRIGHT, PARR, WILLIAMS, WELLS, RUWE, and WHALEN, *JJ.,* agree with the majority opinion.

---

HAMBLEN, *J.,* dissenting: I respectfully dissent for the reasons set forth in my dissent in *Harrell v. Commissioner,* 91 T.C. 242 (1988).

CHABOT, and GERBER, *JJ.,* agree with this dissent.