T.C. Memo. 2007-88


UNITED STATES TAX COURT


THOMAS J. NEHRLICH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20720-04L.                    Filed April 12, 2007.


<u>Patrick J. Quinn</u>, for petitioner.

<u>Catherine G. Chang</u>, for respondent.


MEMORANDUM OPINION


HOLMES, <u>Judge</u>:  After a partnership named JTA Research was audited, one of its partners filed a petition in this Court challenging the disallowance of a large charitable deduction. But he filed the petition too late and we dismissed it for lack of jurisdiction.  The Commissioner then assessed each of JTA's

partners for the additional tax owed because of the disallowed deduction.  One of JTA's other partners, Thomas Nehrlich, didn't pay after being notified of the assessment, and he now challenges the underlying liability.

## Background

Thomas Nehrlich and Jonathan Yee founded JTA in 1990 to sell computer consulting and programming services.  Frank Wypychowski joined JTA in 1994, and the partners adjusted their shares so that each owned one-third.  One year later, JTA donated dental-practice-management software to the University of Iowa.  JTA valued the software at $6 million and deducted the donation as a charitable contribution on its 1995 partnership return.

JTA's 1995 return designated Wypychowski as the firm's tax matters partner (TMP), and the box under "Is this partnership subject to the consolidated audit procedures of sections 6221 through 6233?" (the IRS's way of saying "TEFRA") was checked "Yes".[1]  The return also listed two items, both for $12,850.  The first was an income adjustment for "guaranteed payments to

---

[1] TEFRA is the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, one part of which governs the tax treatment and audit procedures for most partnerships.  See TEFRA secs. 401-406, 96 Stat. at 648-671.  TEFRA requires the uniform treatment of all "partnership items"--a term defined by section 6231(a)(3) and (4), I.R.C.--and its general goal is to treat all partners alike when the IRS adjusts partnership items. Each TEFRA partnership is supposed to designate one of its partners as the TMP to handle TEFRA issues and litigation for the partnership.  Congress frequently amends TEFRA, and though we note the current law where relevant, all other section references are to the Internal Revenue Code and regulations as in effect for 1995.

partners" and the second was on the line labeled "other deductions." JTA identified both these items, in separate statements attached to its return, as "Health Insurance Premiums." Nehrlich agrees with the Commissioner that the double reporting of the premiums was simply a mistake.

The Commissioner audited JTA's 1995 partnership return using TEFRA audit procedures, not because one of the partners had designated himself the TMP and the partnership return had a checked box stating that TEFRA procedures would apply, but because the examiner noticed that JTA allocated one item--the $12,850 in health insurance premiums listed under "other deductions"--other than in equal thirds.[2] The focus of the audit, though, was the value of JTA's gift to the University of Iowa. The Commissioner concluded the software was worthless, and made a $6 million adjustment. At the end of the audit, in October 2000, the Commissioner sent Wypychowski a Notice of Final Partnership Administrative Adjustment (FPAA) by certified mail. The Commissioner alleges that he also mailed an FPAA to Nehrlich, and offers as evidence the first page of an FPAA and a certified mailing list showing Nehrlich's name and address. However, he stipulated that he cannot prove Nehrlich received the FPAA, and Nehrlich claims that he did not.

---

[2] Nehrlich was allocated $2405; Wypychowski, $3111; and Yee, $7334.

But it was Wypychowski who was the putative TMP, and as TMP he filed a petition with us in April 2001, 168 days after the FPAA had been mailed.  The Commissioner noticed the problem--a TMP generally has at most 150 days to file a petition, secs. 6226(a)(90 days), 6226(b) (plus another 60 days as notice partner, see <u>Barbados #6 v. Commissioner</u>, 85 T.C. 900, 904 (1985) --and successfully moved to dismiss the case for lack of jurisdiction.  After winning dismissal, the Commissioner assessed Nehrlich for the deficiencies resulting from the disallowance of the charitable deduction for the years 1995 and 1996.[3]  Nehrlich did not pay, and the Commissioner followed up in September 2003 by sending a collection due process (CDP) notice of his intent to levy and of the filing of a federal tax lien against Nehrlich's property.

Nehrlich asked for and got a CDP hearing, after which the Commissioner mailed him a notice of determination, concluding that

> You have indicated that you have the ability to full pay [sic]; you just disagree with the TEFRA assessments.  You are prohibited from raising the liability issue in your hearing as you received the FPAA, (TEFRA equivalent of a statutory notice of deficiency) and you had prior opportunity to challenge the liabilities.

Nehrlich, a California resident at the time, filed a petition with this Court, and we put the case on a trial calendar

---

C Nehrlich had carried over the charitable deduction to later years.  See sec. 170(d)(1).

for San Francisco.  The parties then submitted it for decision on stipulated facts.

## Discussion

As a general rule, partnerships don't pay taxes, and items of a partnership's income, deductions, and credits are supposed to be reflected on its partners' individual tax returns.  See sec. 701.  Before TEFRA, the IRS adjusted these partnership items after separately auditing each partner.  This easily led to inconsistent adjustments, and TEFRA's requirement that the Commissioner conduct audits at the partnership level was supposed to ensure the uniform adjustment of partnership items.  Maxwell v. Commissioner, 87 T.C. 783, 787 (1986); H. Conf. Rept. 97-960, at 599-600 (1982), 1982-2 C.V. 600, 662-63.  Though the procedures are complicated, the desired result is easy to understand--a final determination concerning a partnership item that binds all the partners and treats them equally.  See sec. 6221; Maxwell, 87 T.C. at 787-88.

TEFRA audits, with their sometimes arcane distinctions between "partnership," "affected," and "nonpartnership" items, can be burdensome, so Congress chose to keep the old audit rules under which each partner resolves his tax liability with the IRS separately, for "small partnerships."  Tax Compliance Act of 1982 and Related Legislation: Hearings on H.R. 6300 Before the House Committee on Ways and Means, 97th Cong., 2d Sess. 259-61 (1982).

Until 1997, the consequences for the Commissioner of treating a TEFRA partnership as a small partnership and a small partnership as a TEFRA partnership could be severe:  If the Commissioner incorrectly classified a partnership, this Court lacked jurisdiction and had to dismiss the case.  <u>Frazell v. Commissioner</u>, 88 T.C. 1405, 1411 (1987); <u>Maxwell</u>, 87 T.C. at 788-89.  The Commissioner had the authority to correct his mistake and issue the proper type of notice, but the statute of limitations wasn't tolled by any procedural flubs and might expire.  Sec. 6501(a).  This meant that a partner might go tax-free by defeating a notice of deficiency with the argument that the Commissioner should have sent him an FPAA, or defeating an FPAA with the argument that the Commissioner should have sent him a notice of deficiency.

This problem has since been fixed,[4] but the present case arose from a tax year that ended before the fix took effect.  And because this is a CDP appeal, it's not our jurisdiction over Nehrlich's case that is in dispute--the notice of determination is what gives that to us.  Secs. 6320(c), 6330(d)(1).  But whether the Commissioner erred in upholding Nehrlich's underlying tax liability may well hinge on whether the Commissioner chose

---

[4] Congress added section 6234 to the Code in 1997.  Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1231(a), 111 Stat. 788, 1020.  Section 6234(h) lets the Commissioner (and us) regard the wrong type of notice as the right one.

correctly in picking the TEFRA audit procedure for JTA.

The reason for this is that Nehrlich's challenge is a challenge to the Commissioner's authority to assess the increase in tax caused by that disallowance. He asserts that JTA was a small partnership, so that the Commissioner's application of TEFRA audit procedures led to an invalid assessment and any later collection efforts were therefore improper. See Freije v. Commissioner, 125 T.C. 14, 36 (2005) (collection actions related to an invalid assessment may not proceed).

This is not a bad technical argument, because the Code draws the line between small and TEFRA partnerships in a somewhat odd way: TEFRA applies its audit procedures only to "partnership items," sec. 6221, which are defined to exist only with respect to partnerships, sec. 6231(a)(3). TEFRA then defines "partnership" to exclude small partnerships, sec. 6231(a)(1)(B), and this then excludes them from TEFRA procedures because a small partnership would have only nonpartnership items, see sec. 6231(a)(4); Maxwell, 87 T.C. at 788. The Commissioner can generally challenge nonpartnership items only through the deficiency process--as we said in Freije, the Commissioner's failure to show that a deduction's disallowance fell within some exception "to the proscription of section 6213(a) on assessments without deficiency procedures is fatal." Freije, 125 T.C. at 35.

This argument, though, rests entirely on whether JTA met TEFRA's definition of a "small partnership." See sec. 6231(a)(1)(B). For the 1995 tax year, this definition set two tests. The first was whether JTA had ten or fewer partners, each of whom was a natural person or the estate of a dead partner. Sec. 6231(a)(1)(B)(i)(I). The Commissioner concedes JTA passed this test.

The second test for the 1995 tax year was whether JTA allocated each item to each partner the same way. This "same-share" requirement meant, for example, that a one-third partner had to get one-third of the partnership's income and deductions; if he got one-third of the income, but one-half of even one of the deductions, the partnership would be subjected to TEFRA.[5] Sec. 6231(a)(1)(B)(i)(II). Nehrlich claims that the Commissioner was wrong to flunk JTA on the same-share test. He reasons that a partnership's "guaranteed payments"[6] were not subject to the same-share requirement, and that JTA's health insurance premiums were "guaranteed payments." Nehrlich is correct that guaranteed payments are not one of the items used in a same-share analysis. See sec. 301.6231(a)(1)-1T(a)(3), Temporary Proced. & Admin.

---

[5] The same-share requirement was removed from section 6231(a)(1)(B)(i) by the Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1234(a), 111 Stat. 1024.

[6] Guaranteed payments are payments made to a partner without regard to the partnership's income. Sec. 707(c).

Regs., 52 Fed. Reg. 6789 (Mar. 5, 1987); McKnight v. Commissioner, 99 T.C. 180, 184-86 (1992), affd. 7 F.3d 447 (5th Cir. 1993). And the Commissioner agrees with him that the $12,850 entry for health insurance premiums that JTA listed under "guaranteed payments" would not have been enough to make JTA a TEFRA partnership.

But the Commissioner defends his determination by pointing to the $12,850 deduction that JTA took under the heading "other deductions." Under the old regulations, a partnership's deductions were generally subject to the same-share rule. See sec. 301.6231(a)(3)-1(a)(1)(i), Proced. & Admin. Regs. Nehrlich counters by arguing that health insurance premiums are always "guaranteed payments," no matter how they are listed on a partnership return, and that the Commissioner should have recognized the premiums as "guaranteed payments" before picking which set of procedures to follow.[7] The Commissioner's failure to spot JTA's mistake in reporting the premiums as a deduction, he concludes, led to the mistaken issuance of an FPAA instead of a notice of deficiency, and so fatally undermined the assessment against him.

---

[7] Nehrlich mentions that the health insurance premiums are affected items but he doesn't argue the point with any specificity. "Affected items" are those that are affected by adjustments to partnership items, sec. 6231(a)(5), and we can't see how the Commissioner's one partnership-level adjustment--disallowing JTA's charitable deduction--affected JTA's health insurance premiums.

The standards for judging the Commissioner's decision to treat JTA as a TEFRA partnership were set by a pair of cases: Z-Tron Computer Research & Dev. Program v. Commissioner, 91 T.C. 258, 262 (1988); and Harrell v. Commissioner, 91 T.C. 242, 246-48 (1988). We held in both those cases that the Commissioner should look only at the partnership return itself to analyze whether a partnership meets the same-share test. The test is passed if, on the face of the return, (1) the partnership reported more than one partnership item for the year, and (2) those items were allocated to each partner in equal shares. Harrell, 91 T.C. at 246; see sec. 6231(a)(1)(B)(i)(II). We stressed in Harrell that the Commissioner should not consult sources other than the return that is in front of his examiner. Harrell, 91 T.C. at 247. Neither a partner nor the Commissioner can "claim a result other than that identified in the return and Schedules K-1 as filed and amended prior to the date of commencement of the partnership audit." Id. This bright-line test defeats parties' later attempts to secure an undue advantage after the statute of limitations has run. Id.

A regulation told the Commissioner which items to look at in applying the test. Sec. 301.6231(a)(1)-1T(a)(3), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6779 (Mar. 5, 1987). One of those items is a partnership "deduction," sec. 301.6231(a)(3)-1 (a)(1)(i), Proced. & Admin. Regs., and so the Commissioner

properly looked at JTA's "other deductions" category. Comparing JTA's partnership return with the individual partners' K-1s, the Commissioner's examiner could easily see that JTA had allocated these "other deductions" on its 1995 return other than in equal thirds. Even though there was a high probability that JTA's reporting the premiums paid for the partners as both a deduction and a guaranteed payment was a mistake, it wasn't up to the examiner to figure this out. Under our rulings in <u>Harrell</u> and <u>Z-Tron</u>, he should have done what he did--look only on the face of the returns.

We therefore hold that the Commissioner did apply the same-share test correctly and JTA was a TEFRA partnership in 1995. Nehrlich's assault on the resulting assessment having failed, he is liable for the tax and a

<u>Decision will be entered for</u>

<u>respondent</u>.