VAsquez, J., dissenting: Our society has a longstanding and “‘deep-rooted historic tradition that everyone should have his own day in court.’” Richards v. Jefferson Cnty., Ala., 517 U.S. 793, 798 (1996) (quoting 18 Charles Alan Wright et al., Federal Practice and Procedure, sec. 4449, p. 417 (1981)). “The opportunity to be heard is an essential requisite of due process of law in judicial proceedings.” Id. at 797 n.4. This Court “has consistently and zealously guarded a taxpayer’s right to his day in court, whenever there was a bona fide dispute between him and the Commissioner of Internal Revenue.” Petersen v. Commissioner, T.C. Memo. 1977-4, 1977 Tax Ct. Memo LEXIS 439, at *6. We have recognized the importance not only to the affected taxpayer, but also to the public’s confidence in the tax collection system that the opportunity for judicial review of bona fide disputes be protected. Id. The opinion of the Court departs from these deeply ingrained principles by denying the Bedrosians their day in court.[1] I believe the result reached by the opinion of the Court is not only inconsistent with the interests of justice but is also the product of an erroneous view of the governing law. The opinion of the Court devotes the bulk of its energy to arguing that sections 6223(e) and 6231(g)(2), two highly complicated provisions within TEFRA, do not apply in this case. See op. Ct. pp. 95-111. The opinion of the Court then goes on to conclude, seemingly irrespective of its prior discussion, that this Court must rule against the Bedrosians under the “law of the case” doctrine. See id. pp. 111-114. I respectfully disagree. I will first explain why the reliance of the opinion of the Court on the “law of the case” doctrine is misplaced. I will then show how section 6231(g)(2) operates to confer jurisdiction on this Court. I. Law of the Case The “law of the case” doctrine is “part of a related set of preclusion principles that includes stare decisis, res judicata, and collateral estoppel.” Gonzalez v. Arizona, 624 F.3d 1162, 1185 n.16 (9th Cir.2010). These preclusion principles are all aimed at promoting the efficient operation of the courts. Id. They are distinguished, however, by the type or stage of litigation in which they separately apply. Id. The law of the case doctrine generally precludes a court from “reconsidering an issue previously decided by the same court, or a higher court in the identical case.” Milgard Tempering, Inc. v. Selas Corp. of Am., 902 F.2d 703, 715 (9th Cir.1990) (citing Richardson v. United States, 841 F.2d 993, 996 (9th Cir.1988), amended, 860 F.2d 357 (9th Cir.1988)). For the law of the case doctrine to apply, “the issue in question must have been ‘decided explicitly or by necessary implication in [the] previous disposition.”’ Id. (quoting Liberty Mut. Ins. Co. v. EEOC, 691 F.2d 438, 441 (9th Cir.1982)). A court may exercise its discretion to depart from the law of the case in three instances: “(1) the first decision was clearly erroneous and would result in manifest injustice; (2) an intervening change in the law has occurred; or (3) the evidence on remand was substantially different.” Id. As the opinion of the Court correctly notes, the Court of Appeals for the Ninth Circuit dismissed the Bedrosians’ appeal in this case for lack of jurisdiction because we had not entered a final judgment as to all claims. See op. Ct. p. 112. However, the opinion of the Court then erroneously concludes that this Court “must rule against the Bedrosians because we are bound by what the Court of Appeals for the Ninth Circuit has already decided in this case.” See id. The opinion of the Court quotes the Court of Appeals’ statement that “‘the Tax Court never had jurisdiction over “such deficiency” in the first place.’” See id. (quoting Bedrosian v. Commissioner, 358 Fed. Appx. 868, 870 (9th Cir.2009)).[2] The opinion of the Court overlooks the fact that the Court of Appeals’ statements in this case constitute dicta. See Md. Nat’l Bank v. Vessel Madam Chapel, 46 F.3d 895, 902 (9th Cir.1995) (“Because the * * * [Court of Appeals for the Fourth Circuit] action was dismissed for lack of jurisdiction, the statement upon which * * * [the claimant-appellee] relies is dicta and therefore not persuasive.”); United States v. Eccles, 850 F.2d 1357, 1365 (9th Cir.1988) (“Because we lack jurisdiction to hear the defendant’s appeal, any statements that we could make here as to the appealability after trial of the defendant’s claims would constitute dicta.”). The law in the Ninth Circuit, in which an appeal of this case would lie, see sec. 7482(b)(1)(A), is absolutely clear that dicta do not have preclusive effect for purposes of the law of the case doctrine, see Milgard Tempering, Inc., 902 F.2d at 715 (“A significant corollary to the [law of the case] doctrine is that dicta have no preclusive effect.”); Ducey v. United States, 830 F.2d 1071, 1072 (9th Cir.1987) (“Dicta is not given preclusive effect under the law of the case doctrine in this circuit.”); Russell v. Commissioner, 678 F.2d 782, 785 (9th Cir.1982) (“Because the res judicata discussion in our prior * * * decision was dicta, it is not part of the law of the case.”). Accordingly, the opinion of the Court is simply mistaken that the Court of Appeals’ statements in dicta bind us in this case. The opinion of the Court also contends that our prior holding in this case binds us.[3] We held in our prior opinion that we do not have jurisdiction over respondent’s adjustments for 1999 in the April 19, 2005, notice of deficiency because the partnership proceeding was pending at the time that notice was issued. See Bedrosian v. Commissioner, T.C. Memo. 2007-375, slip op. at 7. The opinion of the Court correctly notes that “[fjollowing either the section 6223(e) approach advocated by the Bedrosians or the section 6231(g)(2) approach would require that we reconsider our prior opinion”, but then erroneously concludes that doing so would violate the law of the case doctrine. See op. Ct. p. 113. To the contrary, “‘[a]ll rulings of a trial court are subject to revision at any time before the entry of judgment.’ ” City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882, 888 (9th Cir. 2001) (quoting United States v. Houser, 804 F.2d 565, 567 (9th Cir. 1986)); see also Fed. R. Civ. P. 54(b) (“[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties’ rights and liabilities.”). [4] It is undisputed that we did not enter a final judgment as to all claims in this case. See Bedrosian v. Commissioner, 358 Fed. Appx. at 870. Therefore, we have the power to reconsider, modify, or rescind our prior opinion (and the accompanying interlocutory order). The holding in our prior opinion that we lacked jurisdiction over the items in the notice of deficiency for 1999 was based on an agreement of the parties, which we accepted, that these items were either partnership items or affected items. See Bedrosian v. Commissioner, T.C. Memo. 2007-375, slip op. at 7. We did not at the time consider the possible application of section 6231(g)(2), nor did we have the affidavits of the IRS revenue agent and the Bedrosians’ power of attorney (POA) with regard to the events that transpired during the course of the audit. The parties now dispute the characterization of the 1999 items, and it is most prudent for us to reconsider this issue on the merits. See, e.g., Rawls Trading, L.P. v. Commissioner, 138 T.C. 271, 284 (2012) (“[W]e are under an affirmative duty to investigate the extent of our subject matter jurisdiction.”). Lastly, we consider the Stone Canyon Partners proceeding. The opinion of the Court correctly states that “[Hollowing the section 6231(g)(2) approach would render the FPAA and the Stone Canyon Partners proceeding a nullity”. See op. Ct. p. 113. But then the opinion of the Court suggests that both the law of the case doctrine and the collateral estoppel doctrine preclude us from reconsidering our ruling in that proceeding. See id. This is not so. As previously stated, the law of the case doctrine precludes a court from “reconsidering an issue previously decided by the same court, or a higher court in the identical case.” Milgard Tempering, Inc., 902 F.2d at 715 (emphasis added). The Stone Canyon Partners proceeding is not identical to the case before us. The parties might be related. There might be issues in common. But, unquestionably, it is not the identical case. The collateral estoppel doctrine likewise does not apply because it is an affirmative defense which was not raised by either party in this proceeding. See Rule 39; Taylor v. Sturgell, 553 U.S. 880, 907 (2008) (“Claim preclusion, like issue preclusion, is an affirmative defense.”); Kightlinger v. Commissioner, T.C. Memo. 1998-357, slip op. at 24 (“[W]e observe that because res judicata and collateral estoppel are affirmative defenses and neither was pleaded by petitioner, they are deemed waived.”). While this Court may raise collateral estoppel sua sponte, it is not obligated to do so. Monahan v. Commissioner, 109 T.C. 235, 250—251 (1997). “Sua sponte consideration of issue preclusion generally should be limited to circumstances where the parties are given an opportunity to address the applicability of the doctrine to a particular issue.” Id. at 251. They have not been given that opportunity here. And, regardless, I seriously question whether the requirements of collateral estoppel would have even been met.[5] Judge Goeke’s concurring opinion relies on section 6226(h), which might, at first blush, appear to support its argument that the Bedrosians are precluded from contesting any of the adjustments in the FPAA as part of their deficiency case. Section 6226(h) generally provides that a court’s dismissal of an action brought under the section is considered to be its decision that the FPAA is correct. However, no partnership action with respect to Stone Canyon was actually brought under section 6226. The TMP of Stone Canyon did not file a petition in response to the FPAA within 90 days under section 6226(a), nor did any other partner file a petition within 60 days after the close of the 90-day period under section 6226(b). The dismissal of a partnership action which was not properly brought under section 6226, as is the case here, has no preclusive effect. See Cent. Valley AG Enters, v. United States, 531 F.3d 750, 765-766 (9th Cir.2008) (“TEFRA contains no provision stating that an FPAA has preclusive effect based solely on the failure to timely pursue TEFRA remedies and notwithstanding the lack of a Tax Court proceeding.”); see also A.I.M. Controls, L.L.C. v. Commissioner, 672 F.3d 390, 392 n.2 (5th Cir. 2012) (“Because Royce Mitchell was not a tax matters partner of * * * [the partnership], he lacked authority to bring an action under * * * [section] 6226(a), and * * * [section] 6226(h)’s bar was not triggered by the district court’s dismissal of his action.”). In short, there is no bar that prevents this Court from considering the merits of section 6231(g)(2). The reliance of the opinion of the Court on the law of the case doctrine is wholly inapposite. One of the underlying rationales for preclusion doctrines, such as law of the case, is to prevent litigants from taking the proverbial second bite at the apple. But that is not what the Bedrosians ask of us. They have yet to take their first bite. II. The TEFRA Procedures I now arrive at section 6231(g)(2), which presents an issue largely of first impression in any court. I thus believe it is appropriate to take a step back and look at how that section fits into the statutory scheme of TEFRA as a whole. A. Background “TEFRA’s design is premised on the conceptual dichotomy of partnership and nonpartnership items.”[6] Rawls Trading, L.P. v. Commissioner, 138 T.C. at 286. The tax treatment of partnership items must be resolved under the TEFRA procedures at the partnership level. Sec. 6221. The tax treatment of nonpartnership items must be resolved under the normal deficiency procedures at the individual level.[7] See secs. 6212(a), 6230(a)(2); Huff v. Commissioner, 138 T.C. 258, 263 (2012). The House conference report, H.R. Conf. Rept. No. 97-760, at 611 (1982), 1982-2 C.B. 600, 668, makes these rules explicitly clear: Existing rules relating to administrative and judicial proceedings, statutes of limitations, settlements, etc., will continue to govern the determination of a partner’s tax liability attributable to nonpartnership income, loss, deductions, and credits. Neither the Secretary nor the taxpayer will be permitted to raise nonpartnership items in the course of a partnership proceeding nor may partnership items, except to the extent they become nonpartnership items under the rules, be raised in proceedings relating to nonpartnership items of a partner. As the opinion of the Court acknowledges, Congress intended the TEFRA procedures and the normal deficiency procedures to be “mutually exclusive”. See op. Ct. p. 108; see also Internal Revenue Manual (IRM) pt. 4.31.2.1.1(1) (June 1, 2004) (“[T]he TEFRA partnership rules and the deficiency procedures are mutually exclusive.”). Merriam Webster’s Collegiate Dictionary 768 (10th ed. 1996) defines the term “mutually exclusive” as “being related such that each excludes or precludes the other”. In other words, the IRS’ choice to audit a partnership return using the TEFRA procedures precludes the IRS from conducting that same audit under the normal deficiency procedures. Likewise, the IRS’ choice to audit a partnership return using the normal deficiency procedures precludes the IRS from conducting that same audit under the TEFRA procedures. The rules Congress prescribed require the IRS to choose one, and only one, of the procedures. However, in this case, like many before it, the IRS has chosen to apply both procedures. This practice has resulted in duplicative audits, confusion among the taxpayers, an unnecessary burden on the court system, and in this case a rare IRS apology to the Court for a lack of consistency and candor.[8] See op. Ct. pp. 94-95. That makes this case the appropriate vehicle to start enforcing the rules. B. Section 6231(g)(2) So how does section 6231(g) fit into this picture? That section was Congress’ attempt to address the difficulties faced by the IRS in determining which of the procedures to apply. See H.R. Rept. No. 105-148, at 587-588 (1997), 1997-4 C.B. (Vol. 1) 319, 909-910. The IRS’ approach was (and still is) to disregard the rules and apply both procedures when the IRS is uncertain as to the correct procedures. See IRM pt. 4.31.2.1.8(1) (June 20, 2013) (“These key cases are controlled as both TEFRA and nonTEFRA. This is done when it is unclear whether a key case is TEFRA or nonTEFRA to protect the government’s interest.”). But Congress had a different approach in mind. Congress’ approach was to permit the IRS to rely on a partnership’s return and to make that return determinative of the audit procedures to be followed. See H.R. Rept. No. 105-148, supra at 587-588, 1997-4 C.B. (Vol. 1) at 909-910 (“Partnership return to be determinative of audit procedures to be followed”); see also sec. 6231(g) (“Partnership Return To Be Determinative of Whether Subchapter Applies.”). If the IRS selects the correct procedures, section 6231(g) does not come into play. If the IRS selects the wrong procedures, but is reasonable in doing so, section 6231(g) treats the wrong procedures as the correct ones. If the IRS acts unreasonably in its determination, it does so at its peril and “possibly jeopardize^] any assessment”. H.R. Rept. No. 105-148, supra at 587-588, 1997-4 C.B. (Vol. 1) at 909-910; see also IRM pt. 4.31.2.1.1(1) (June 1, 2004) (“If the Service applies the wrong procedures, e.g., erroneously proceeds at the partnership level rather than at the partner level, or vice versa, barred deficiencies and/or refunds can result.”). 1. Determination To Apply the Normal Deficiency Procedures The record in this case clearly establishes that the IRS selected the normal deficiency procedures to audit Stone Canyon’s return. The very first notice the IRS sent to the Bedrosians in this case was a letter informing them that their Form 1040, U.S. Individual Income Tax Return, for 1999 had been selected for audit. A Form 1040 is an individual income tax return. The letter did not mention that the IRS had commenced, or was even considering, a TEFRA audit of Stone Canyon’s return. The IRS enclosed in the letter a standard Form 872, Consent to Extend the Time to Assess Tax, which is used to extend the period of limitations with respect to nonpartnership items as part of an individual-level audit. See sec. 6501(c)(4). It does not extend the period of limitations with respect to partnership items or affected items (unless it has been specifically modified for that purpose — and it was not here). See sec. 6229(b)(3); Ginsburg v. Commissioner, 127 T.C. 75, 87 (2006). The Bedrosians submitted to the IRS a Form 2848, Power of Attorney and Declaration of Representative, with respect to their individual income tax return for 1999, consistent with their understanding that the IRS had commenced an individual-level audit. At no point during the audit did the IRS request that a Form 2848 be executed for Stone Canyon, the LLC, or the S corporation.[9] Over the course of an audit lasting more than a year and a half, the IRS exchanged multiple communications with the Bedrosians and their POA, including information document requests, proposed settlement agreements (on Forms 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment), and proposed audit changes. All of these actions were taken at the individual level. On brief respondent admits that his “revenue agent erred in soliciting an extension of the limitations period on Forms 872 and in soliciting a settlement agreement on Form 870” but argues with respect to the other events that “the revenue agent focused on Petitioners’ individual income tax liability as a matter of practicality in conducting an examination of a Son-of-Boss partnership subject to TEFRA, not because the revenue agent believed that the Partnership was not subject to the TEFRA provisions of the Code.” The opinion of the Court goes along with this argument and holds that all of the actions that take place before the issuance of an FPAA or a notice of deficiency are the “give- and-take of an ongoing examination.” See op. Ct. p. 107. None of them matter. According to the opinion of the Court, the only action that matters for purposes of section 6231(g) is the final notice that concludes an audit. See id. at 106— 107. The opinion of the Court’s backward-looking approach is contrary to both the statute and the legislative history. Neither the statute nor the legislative history provides any guidance as to the meaning of the phrase “on the basis of a partnership return”. See id. The opinion of the Court does not attempt to come up with an appropriate definition. Instead, it simply reads this phrase out of the statute on the ground that “[ljooking behind the notice is disfavored.”[10] See id. at 108. Under the opinion of the Court’s approach, if the IRS issues an FPAA at the end of a partnership audit, then the IRS is said to have made a determination to apply the TEFRA procedures for purposes of section 6231(g), and vice versa, regardless of which procedures the IRS actually used throughout the audit. It matters not to the opinion of the Court whether the IRS even consulted the partnership’s return. Such an approach is contrary to the basic principle of statutory construction that all words of a statute are to be given meaning. See Market Co. v. Hoffman, 101 U.S. 112, 115 (1879) (“It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word.”). This approach would also render meaningless any distinction between the TEFRA procedures and the normal deficiency procedures with respect to an audit. The legislative history to the statute is clear that a partnership’s return is to be determinative of the audit procedures the IRS is to apply. See H.R. Rept. No. 105-148, supra at 587-588, 1997-4 C.B. (Vol. 1) at 909-910. Similarly, the heading of the statute states that a “[partnership return [is] to be determinative of whether subchapter applies.” Sec. 6231(g). The subchapter in question is subchapter C of chapter 63, otherwise known as the “unified partnership audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA)”. Rawls Trading, L.P. v. Commissioner, 138 T.C. at 272 (emphasis added). If, as the opinion of the Court contends, the IRS does not make its determination until it issues an FPAA or a notice of deficiency, then the determination, even if made on the basis of a partnership’s return, would have no bearing on the audit procedures the IRS is to apply. An FPAA and a notice of deficiency are the final notices that conclude an audit. The opinion of the Court’s reading of the statute would turn it into a provision that speaks solely to the proper litigation procedures going forward. This is simply not a logical construction of the statute. See United States v. Koyomejian, 946 F.2d 1450, 1458 (9th Cir. 1991) (“The role of the courts is to give legislative enactments a sensible and logical construction whenever it is possible to do so through the use of ordinary tools of reasoning and statutory construction, rather than to adopt a sterile and unreasonable interpretation that Congress itself would clearly find unacceptable.”). I believe that Congress intended the IRS to make its determination at the outset of an audit by examining a partnership’s return and the attached Schedules K-l, Partner’s Share of Income, Credits, Deductions, etc. This Court reached the same conclusion in Harrell v. Commissioner, 91 T.C. 242 (1988),[11] for purposes of two very similar TEFRA provisions. The issue in Harrell was how to apply the now-repealed same share rule of the small partnership exception. The same share rule was satisfied if “each partner’s share of each partnership item * * * [was] the same as his share of every other item.” Sec. 6231(a)(l)(B)(i)(II) (1982). We held in Harrell v. Commissioner, 91 T.C. at 246: [F]or purposes of determining whether a partnership is a small partnership and whether the same share rule is satisfied, the test should be applied by determining whether the partnership reported more than one partnership item for the year and, if so, how those items were shared by each partner. This determination should be made by respondent as of the date of commencement of the audit of the partnership (but not necessarily on that date) by examining the partnership return and the corresponding Schedules K-l, and any amendments thereto received prior to this date. [Emphasis added.] In reaching our holding in Harrell, we looked at the purpose of the small partnership exception in the context of TEFRA as a whole. We explained that the small partnership exception “serves the limited purpose of determining to whom to issue a statutory notice or whether to issue an FPAA”. Id. at 247. Because of that, and for the sake of judicial economy, we would not for purposes of the same share rule “permit a partner or representative of a partnership or respondent to claim a result other than that identified in the return and Schedules K-l as filed and amended prior to the date of commencement of the partnership audit.” Id. We reasoned that “relying on the partnership returns and accompanying Schedules K-l” would minimize “the extent to which respondent must interpret the partnership agreement each year”, id. at 248, and we concluded that said approach “best serves the purpose of simplicity that is behind the partnership audit and litigation provisions”, id. We also looked at section 6233, which prescribes in general that where an entity files a return as a partnership, it will be subject to the TEFRA procedures even though it is later determined that the putative partnership is not a partnership for tax purposes. We found that for purposes of section 6233 “Congress mandated that the information on the tax return would be determinative of the procedures to be followed, even if the underlying facts later prove the return to be incorrect.” Id. We concluded that the approach in Harrell with respect to the same share rule was “totally consistent with the approach mandated by Congress in section 6233, i.e., making the determination regarding the application of the TEFRA procedures on the basis of the partnership information return.” Id. (emphasis added). I believe that Congress intended the approach in Harrell to apply for purposes of section 6231(g). Section 6231(g) is similar to section 6231(a)(l)(B)(i)(II) (1982) (i.e., the same share rule of the small partnership exception) and section 6233, discussed above, in that all three provisions revolve around the IRS’ selection of either the TEFRA procedures or the normal deficiency procedures by which to audit a partnership return. Moreover, for all three provisions, Congress sought to make the information on a partnership’s return determinative of the audit procedures the IRS is to apply. Unlike the opinion of the Court’s approach, the Harrell approach gives effect to the phrase “on the basis of a partnership return”. Moreover, the IRS’ determination would actually govern the procedures to be used throughout the audit, as Congress had intended. And under the Harrell approach, there is no question that the IRS made a determination, on the basis of Stone Canyon’s return, to apply the normal deficiency procedures. See supra pp. 128-129; see also op. Ct. p. 107 (“Undoubtedly, the IRS initially treated the examination underlying this case as though it was not a TEFRA examination.”). 2. Reasonableness The second half of the inquiry under section 6231(g)(2) is one of reasonableness. The statute applies only if the IRS’ determination to follow the normal deficiency procedures was reasonable. The opinion of the Court holds that “the only reasonable conclusion is that TEFRA applies to Stone Canyon.” See op. Ct. p. 111. The opinion of the Court acknowledges all of the inconsistencies on Stone Canyon’s return, but chooses to disregard them, looking solely at the attached Schedules K — 1. Id. The opinion of the Court also chooses to disregard the IRS’ lack of candor in this case, calling it a “sideshow”. Id. pp. 94-95. I do not dismiss such conduct so lightly, especially where, as here, it has a direct bearing on one of the issues in this case — the question of reasonableness. On December 1, 2004, during the audit, the IRS’ revenue agent participated in a conference call with IRS Office of Chief Counsel attorneys and the IRS Son-of-BOSS TEFRA coordinator. The revenue agent filed an affidavit in this case claiming that she wanted to discuss “how to proceed with this case in order to disallow the net operating loss carryforward deductions claimed on Petitioners’ Form 1040 for the 2000 tax year, in view of * * * [her] determination that the limitations period for issuing a notice of final partnership administrative adjustment (FPAA) for the 1999 tax year had expired.” The revenue agent explains in her affidavit that two months later, the TEFRA coordinator advised her that the IRS should issue an FPAA for 1999 in order to disallow the NOL carryforward deduction for 2000. Actually, though, the IRS wanted to disallow a $17 million loss deduction on the Bedrosians’ 1999 return, an amount that dwarfs the approximately $80,000 NOL carryforward deduction in comparison. The problem was that the IRS had been using the wrong audit procedures for more than a year and had allowed the correct period of limitations to lapse.[12] On February 1, 2005, approximately a year and a half into the audit, the IRS’ revenue agent called the Bedrosians’ POA and told her that the IRS would soon issue an NBAP for 1999. The POA inquired as to why the IRS would issue an NBAP (a partnership-level notice) when the IRS was in the process of issuing audit reports with respect to the Bedrosians’ individual income tax return for 1999. The revenue agent responded that “the NBAP was procedural and that the TEFRA examination would be 'opened and shut’.” The POA in all likelihood had no idea what the revenue agent meant by that. The very next day the revenue agent mailed the NBAP to the Bedrosians but not to their POA. The revenue agent instead mailed the POA proposed individual audit reports for 1999. Approximately two weeks later, the POA mailed the revenue agent a letter stating that the Bedrosians had forwarded the NBAP to her and inquiring whether the revenue agent needed, among other things, executed Forms 2848 for Stone Canyon, the LLC, and the S corporation. The revenue agent received the POA’s letter but decided not to respond to it.[13] The following month, though, the revenue agent mailed the POA finalized audit reports making adjustments at the individual level. In April 2005 the IRS issued an FPAA and a notice of deficiency separated by only 11 days.[14] The IRS disallowed the $17 million loss deduction for 1999 in the FPAA and in the notice of deficiency, the former at the partnership level and the latter at the individual level. The IRS knew or should have known that it was not proper to disallow this exact same loss deduction in both notices. See H.R. Conf. Rept. No. 97-760, supra at 611, 1982-2 C.B. at 668. In August 2005 the IRS assessed, and the Bedrosians paid, more than $4 million in tax and interest as a result of the $17 million loss deduction adjustment. On October 19, 2006, at a hearing over which I presided, I asked respondent’s counsel why the IRS had issued a notice of deficiency 11 days after it had issued an FPAA. Respondent’s counsel offered three reasons. First, the $17 million loss was incurred at the level of the S corporation and not the partnership. Second, the characterization of the transaction fees was not clear. And the third reason offered by respondent’s counsel was as follows: I think significantly, Your Honor, on the taxpayers’ 1065, Form 1065, Schedule B, Question 4, ‘Is this partnership subject to the consolidated audit procedures of Section 6221 through 6233?’ Answer, ‘No.’ They put on their return that they weren’t subject to the TEFRA procedures. So it seemed, at least in part, that the IRS followed both procedures in the audit because it was not clear, on the basis of Stone Canyon’s partnership return, which of the procedures was the correct one. At a September 21, 2010, hearing before Chief Special Trial Judge Peter J. Panuthos, counsel for respondent made this point explicitly clear: The difficulty with the situation as the Service saw it was that the partnership return, on the partnership return when asked if this was a TEFRA partnership it had been marked no this was not a TEFRA partnership. Therefore, given the fact that also there was a TMP appointed, the Service did not quite have a complete handle on whether or not this was a TEFRA partnership, so they are caught between a rock and a hard place. Then on September 20, 2012, in respondent’s objection to Chief Special Trial Judge Panuthos’ recommended findings of fact and conclusions of law, respondent’s counsel once again affirmed: Respondent was unsure at the time the notice of deficiency was issued, whether the partnership was subject to the Code’s TEFRA partnership procedures and, if subject to the TEFRA procedures, whether certain items would be regarded by the Court as partnership items or affected items. Indeed, Mr. Bedrosian signed the partnership’s Form 1065, on which a box was checked stating that the partnership was not subject to the TEFRA partnership procedures. After the Court brought section 6231(g)(2) to the parties’ attention, respondent changed his position. The uncertainties surrounding Stone Canyon’s partnership return disappeared. On brief, respondent explained his new position as follows: [S]ince the information reported on the partnership return shows that both partners in the partnership were pass-thru partners, the small partnership exception does not apply to the partnership. Therefore, based on the partnership return, * * * [the IRS] could have reasonably determined only that the partnership was subject to the TEFRA partnership provisions. Stone Canyon’s representation that it was not subject to the TEFRA procedures no longer seemed to matter. In fact, respondent suggested on brief that the IRS might not have even considered it: The statement on the subject partnership return that the partnership taxable year is not subject to the TEFRA procedures cannot, in context, serve as evidence that * * * [the IRS] made a reasonable determination, on the basis of the partnership return, that the TEFRA procedures do not apply. While * * * [the IRS] could have considered such a statement in making * * * [its] determination, there is no authority for binding * * * [the IRS] to such a statement when the partnership return also provided a statement that there was at least one pass-thru partner. Then, in respondent’s response to petitioners’ allegations of fraud (i.e., respondent’s apology to the Court), respondent made the bold claim: Respondent has consistently taken the position that * * * [the] Stone Canyon Partnership is subject to the TEFRA provisions of the Code. Needless to say, respondent’s claim is simply not true. In short, the IRS has been less than open and candid with both the Bedrosians and this Court. The opinion of the Court concludes that the IRS’ conduct has no bearing on the outcome of this case. The opinion of the Court contends that “the Schedules K — l that were included with and are part of the partnership return make it clear that the partnership must have been subject to TEFRA as a matter of law” and that “the only reasonable conclusion is that TEFRA applies to Stone Canyon.” See op. Ct. p. 111. I respectfully disagree. I do not believe the opinion of the Court’s bright-line test is appropriate. The opinion of the Court seems to mistakenly equate the term “reasonable” with the term “correct”. If every incorrect determination were also found to be unreasonable, then section 6231(g)(2) would serve no purpose. Section 6231(g)(2), by its terms, applies only if a determination is both incorrect and reasonable. I believe the question of reasonableness is most appropriately determined under all of the facts and circumstances. See, e.g., Pac. Grains, Inc. v. Commissioner, 399 F.2d 603, 606 (9th Cir. 1968) (stating that the reasonableness of compensation is a question of fact to be determined on the basis of all the facts and circumstances), aff’g T.C. Memo. 1967-7; Patel v. Commissioner, 138 T.C. 395, 417 (2012) (stating that reasonable cause and good faith are determined on a case-by-case basis, taking into account all pertinent facts and circumstances); Price v. Commissioner, 102 T.C. 660, 662 (1994) (stating that for purposes of an award of litigation costs, the determination of the reasonableness of the Commissioner’s position is based on all the facts and circumstances), aff’d without published opinion sub nom. TSA/Stanford Assocs., Inc. v. Commissioner, 77 F.3d 490 (9th Cir. 1996); Montgomery v. Commissioner, 65 T.C. 511, 519 (1975) (stating that the existence of a reasonable prospect of recovery depends on the facts and circumstances); Carithers-Wallace-Courtenay v. Commissioner, 5 T.C. 942, 945 (1945) (stating that the reasonableness of an addition for a bad debt reserve depends upon the facts and circumstances); EMI Corp. v. Commissioner, T.C. Memo. 1985-386 (stating that whether a corporation’s accumulation of earnings for a contingent liability is reasonable depends upon all the facts and circumstances). When I look at all of the facts and circumstances of this case, there is no question in my mind that a determination to apply the normal deficiency procedures on the basis of Stone Canyon’s return would be reasonable. The information on Stone Canyon’s Form 1065, U.S. Partnership Return of Income, for 1999, including the attached Schedules K-l, was confusing and contradictory. As even the opinion of the Court points out, the return “contained conflicting and necessarily erroneous information.” See op. Ct. p. 111. Stone Canyon expressly reported that it was not subject to the TEFRA procedures, and yet it designated a TMP, which exists only in the world of TEFRA partnerships. Stone Canyon attached a Schedule K-l to its return listing an LLC as one of its partners. However, Stone Canyon identified the LLC as an “INDIVIDUAL”, which would not be a pass-through partner. See sec. 6231(a)(9). The opinion of the Court brushes aside these inconsistencies and places all of its reliance on a second Schedule K-l in which Stone Canyon identified its other partner as an “S CORPORATION”. How could one know, looking solely at the partnership return, whether this information was not also incorrect? The information on Stone Canyon’s return was plainly unreliable. I fail to see why Stone Canyon’s representation that it was not subject to TEFRA is any less credible, and entitled to any less reliance, than the other information on the return. The statements respondent’s counsel made to this Court in 2006, 2010, and 2012 clearly indicate that the IRS relied on Stone Canyon’s representation. To impose upon the IRS an affirmative duty to seek out additional information from Stone Canyon or its partners for the sole purpose of discerning what information on the return was correct so that the IRS could apply the correct procedures in the audit would undercut the very purpose of section 6231(g). I believe that it would be reasonable for the IRS to apply either the normal deficiency procedures or the TEFRA procedures on the basis of the return. My conclusion is bolstered by the Court of Appeals for the Seventh Circuit’s opinion in Cole v. Commissioner, 637 F.3d 767 (7th Cir. 2011), aff’g T.C. Memo. 2010-31. In that case, the taxpayer husband incorrectly represented on a Form 1065 that an LLC (taxed as a partnership) owned by him, his wife, and his wife’s family trust was not subject to the TEFRA procedures.[15] Id. at 770, 779. The taxpayers argued on appeal that the Tax Court erred in taking jurisdiction over the items originating from the LLC because the IRS failed to apply the TEFRA procedures to the LLC. Id. at 779. The Court of Appeals summarily dismissed the taxpayers’ argument, finding that the taxpayers’ attempt to raise TEFRA, when the taxpayer husband expressly stated that the LLC was not subject to TEFRA, was “misguided”. Id. 3. Whether Section 6231(g)(2) Confers Jurisdiction I would find that all three requirements of section 6231(g)(2) have been met in this case: (1) the IRS made a determination to follow the normal deficiency procedures on the basis of Stone Canyon’s return; (2) it was reasonable for the IRS to do so; and (3) the determination turned out to be erroneous. Where, as here, the requirements of the statute are met, “the provisions of this subchapter shall not apply to such partnership (and its items) for such taxable year or to partners of such partnership”. The statute should be construed to mean exactly what it says and the conclusion here should be: The TEFRA procedures do not apply to Stone Canyon and its partners for 1999. See Conn. Nat’l Bank v. Germain, 503 U.S. 249, 253-254 (1992) (“[CJourts must presume that a legislature says in a statute what it means and means in a statute what it says there.”). Consequently, Stone Canyon would be treated as though it were subject solely to the normal deficiency procedures for 1999. Therefore, there would be no distinction between partnership items, nonpartnership items, and affected items of Stone Canyon. See sec. 6231(a)(3), (4) and (5). Nor would any items of Stone Canyon be properly determinable in a partnership-level proceeding. See sec. 6221. Instead, all items of Stone Canyon would be taken into account by the partners of Stone Canyon in accordance with their distributive shares, see secs. 701-704, and would be properly determinable on a partner-by-partner basis at the individual level, see sec. 6212. And that is exactly how the IRS audited and adjusted Stone Canyon’s items in this case. I would hold that this Court has jurisdiction over all of the items in the notice of deficiency through the application of section 6231(g)(2). III. Conclusion The IRS’ conduct in this case led both the Bedrosians and this Court down the wrong path. This Division of the Court issued the opinion in this case and the two related cases. At the time we knew little of what happened during the audit. There had never been a trial in this case. Fortunately, neither the law of the case doctrine nor any other judicial doctrine of which I am aware prevents this Court from reaching the right result in the end. I do not know whether the Bedrosians are entitled to any of the loss deductions they claimed, but I wholeheartedly believe they are entitled to their day in court to make their case. Judge Halpern writes in his concurring opinion that the Bedrosians missed their opportunity to have their day in court by failing to timely petition in response to the FPAA. See Halpern op. p. 116. Judge Halpern overlooks the fact that the IRS led the Bedrosians to believe that the April 19, 2005, notice of deficiency, in response to which they filed a timely petition, was the appropriate notice. It is the IRS, and not the taxpayer, that chooses audit procedures. In this case, the IRS chose the normal deficiency procedures and applied those procedures, and only those procedures, for approximately a year and a half. But at that late stage of the audit, the IRS changed course in an attempt to gain an unfair advantage over the Bedrosians. The IRS began a partnership-level audit, allegedly to disallow NOL carryforward deductions on the Bedrosians’ Form 1040 for 2000, and told the Bedrosians’ POA that said audit would be “opened and shut”. All the while, the IRS continued to examine Stone Canyon at the individual level until the very last day of the audit. I would hold that section 6231(g)(2) applies to treat this case exactly as the IRS treated it from the outset — as an individual deficiency case. Because the interests of substantial justice so require, I respectfully dissent. Thornton, Colvin, and Foley, JJ., agree with this dissent. This Court previously held that we have jurisdiction over the transaction fees for 2000, see Bedrosian v. Commissioner, T.C. Memo. 2007—375, and the opinion of the Court does not disturb this holding. The complete sentence from which the opinion of the Court extracts the quotation from the Court of Appeals’ opinion reads as follows: “No assessment could possibly deprive the Tax Court of jurisdiction over that particular deficiency, because the Tax Court never had jurisdiction over ‘such deficiency’ in the first instance.” Bedrosian v. Commissioner, 358 Fed. Appx. 868, 870 (9th Cir. 2009), aff’g T.C. Memo. 2007-376. This statement appears in the portion of the opinion dealing with the affected items notice issued in 2006 rather than in the separate section of the opinion dealing with the notice of deficiency issued in 2005. The exact meaning of the quoted statement is unclear, especially considering that in the previous paragraph of its opinion the Court of Appeals had expressly held that it lacked jurisdiction to consider an appeal with respect to the 2005 notice of deficiency because the appeal was interlocutory inasmuch as the Tax Court had dismissed the Bedrosian’s challenge to the 2005 notice of deficiency only in part, “retaining jurisdiction” over certain issues reflected in the notice of deficiency. Id. Judge Goeke agrees with the opinion of the Court as to this point in his concurring opinion. Where, as here, there is no Tax Court Rule on point, we consult the Federal Rules of Civil Procedure for guidance. Rule 1(a); Davis v. Commissioner, T.C. Memo. 2006-272, slip op. at 5. In Peck v. Commissioner, 90 T.C. 162, 166-167 (1988), aff’d, 904 F.2d 525 (9th Cir. 1990), we set forth five requirements that must be met before application of collateral estoppel in the context of a factual dispute: (1) the issue in the second suit must be identical in all respects with the one decided in the first suit; (2) there must be a final judgment rendered by a court of competent jurisdiction; (3) collateral estoppel may be invoked against parties and their privies to the prior judgment; (4) the parties must actually have litigated the issues and the resolution of these issues must have been essential to the prior decision; and (5) the controlling facts and applicable legal rules must remain unchanged from those in the prior litigation. The opinion of the Court does not discuss these requirements, and it is far from clear whether the first, fourth, and fifth requirements have been met. Compare sec. 6231(a)(3) (defining the term “partnership item”, with respect to a partnership, to mean “any item required to be taken into account for the partnership’s taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level”), with sec. 6231(a)(4) (defining the term “nonpartnership item” to mean “an item which is (or is treated as) not a partnership item”). There is a third category of items within TEFRA called affected items. An affected item, as its name implies, is a nonpartnership item which is affected by a partnership item. Sec. 6231(a)(5). There are two types of affected items: (1) items that require factual determinations to be made at the partner level (factually affected items), and (2) items that require merely a computational adjustment (computationally affected items). See Petaluma FX Partners, LLC v. Commissioner, 135 T.C. 581, 595 n.2 (2010). The normal deficiency procedures apply to factually affected items (other than penalties, additions to tax, and additional amounts that relate to adjustments to partnership items). Sec. 6230(a)(2)(A)(i). We note that duplicative audits and litigation were some of the problems Congress sought to resolve in enacting TEFRA. See Adams v. Johnson, 355 F.3d 1179, 1186-1187 (9th Cir. 2004); Maxwell v. Commissioner, 87 T.C. 783, 787 (1986); H.R. Conf. Rept. No. 97-760, at 599-600 (1982), 1982-2 C.B. 600, 662-663. Internal Revenue Manual (IRM) pt. 4.10.3.2.1.1(1) (Mar. 1, 2003) states: When a taxpayer obtains representation, the examiner will ensure that the authorization, Form 2848, Power of Attorney (POA), Form 8821, Tax Information Authorization (TIA), or a similar privately designed form, is properly executed. Service personnel are prohibited from disclosing tax information of a confidential nature to any unauthorized person. Upon receipt, the authorization must be date stamped and reviewed to ensure that it contains all required information. * * * Had the IRS determined that the TEFRA procedures applied to Stone Canyon, the IRS should have at minimum secured a power of attorney from Mr. Bedrosian in his capacity as the sole managing member of the LLC (the TMP of Stone Canyon). See id. pt. 4.31.2.2.6(1) (June 20, 2013) (“A TMP may appoint a power of attorney (POA) to represent the partnership before the Service and to perform all acts for the partnership except for the execution of ‘legally significant documents’.”). We note that there are exceptions to the rule that we generally do not look behind a notice of deficiency. An exception applies, for example, where there is “substantial evidence of unconstitutional conduct on respondent’s part”. See Greenberg’s Express, Inc. v. Commissioner, 62 T.C. 324, 328 (1974). We believe that another exception is appropriate for purposes of sec. 6231(g) because the statute and the legislative history specifically speak to the audit procedures to be followed by the IRS. See infra p. 131. Z-Tron Computer Research & Dev. Program v. Commissioner, 91 T.C. 258 (1988), is a companion case to Harrell and was filed on the same day. The general three-year periods of limitations under secs. 6229(a) and 6501(a) had both expired. The POA’s letter was stamped “received” on February 22, 2005, by the IRS office in which the revenue agent worked. Both notices were actually drafted on the same day. A trust, like an S corporation, is a passthrough partner. See sec. 6231(a)(9).